Good morning, Your Honors. My name is Kevin Bringell. I represent the Defendant Appellant Gregory Clements. The question in the case is whether a greater than six-month delay in executing an arrest warrant for a violation of probation is an unreasonable delay where the government knows of the defendant's whereabouts and offers no explanation for the delay. The defendant's answer to that question is obviously, yes, it is unreasonable. The government apparently contends that in any circumstances, even without explanation, a greater than six-month delay is not unreasonable. But moreover, the government contends that prejudice must be shown by the defendant. And I think, given that that wasn't, I think, addressed fully in the defendant's papers, I wanted to address that prejudice question first. The government cites two cases for that proposition, that prejudice is requisite, must be shown by the defendant. The cases are the Riggins case from this Court in 1984, as well as the Wickham case also from this Court in 1980. Riggins, I want to urge the Court, does not stand for what the government says it stands for and is otherwise an apposite in this case. First of all, it's inapplicable because it was a Youth Corrections Act case. It was a juvenile case. We've cited here, source for the error is Rule 32.1 of the Federal Rules of Criminal Procedure that didn't apply in Riggins. The Federal Rules of Criminal Procedure have a separate rule telling courts not to reverse for, I can't remember what the exact phrasing is, but basically not to reverse for errors where there's no prejudice. So perhaps you could comment on what the prejudice is. Certainly, Your Honor. I'll skip down to that. That was my final point. The prejudice here, I think, would be the same as it was in this Court's decision in Hill and this Court's decision in Hamilton, which are two cases we have discussed in our papers,  but to understand why there is the prejudice that there is, one needs to understand the complete facts in Riggins in order, I think, to contrast it fully. So I'd like to do that with the Court's permission. The facts in Riggins were not completely set forth in that case, but there was a broader discussion of them in the en banc decision in Riggins that preceded it. That case was filed U.S. v. Wong Cho, and the full citation is right there in the beginning of the Riggins case. And in Wong Cho, Judge Reinhardt gave a fuller explanation of the facts, two key facts being that the delay there was greater than four years, and second, that the Government had shown that the reason for the delay was a, quote, acute shortage of manpower at the U.S. Marshal's office. That's at page 1262 of the Wong Cho decision. Those are the facts in Riggins. It's clear that in Riggins, the Government or the Court, excuse me, was deciding the case, I think, more based on the fact that there was reason for the delay. Let me tell you what's on my mind. I don't know about my colleagues. What's on my mind is this. You've got an unexcused and it appears to be possibly inexcusable delay of six months by the Government. It appears to be perhaps a violation of Rule 32.1, and if not, a violation of a rule established by Federal common law, you might say. However, there's also a rule that we can't reverse for harmless error. Now, I'm trying to figure out what the prejudice is. The prejudice that the cases speak of is prejudice in proving you didn't do it when you're charged with a probation revocation or prejudice in inability to set the Government's proof that you did do it. Correct. That prejudice doesn't appear to pertain. Another kind of prejudice that occurred to me is you have a dirty U.A., you're living a dissolute life, you ought to be revoked, the warrant is issued, they don't do anything about it, everybody forgets about it, and three or four years later they catch up to you, you've rehabilitated yourself. You've got a job, you're living with your wife and kids, you're behaving yourself, supporting your family, and then they throw you in jail, destroying your rehabilitation instead of In this case, I can't see either one. There's no evidence that he got a job. There's no evidence he had any trouble caused by the delay in challenging the Government's proof of a dirty U.A. I can't see any prejudice at all. I think actually the prejudice is of the latter sort. The one that you just described, Your Honor, I think encapsulates well to the extent there was prejudice. How do I know? All I know is he came back from a trip overseas. But as for whether it was because he'd become a consultant for McKinsey or because he was picking up some dope, I don't know. Right. Well, I think here's what I want to argue, Your Honor, and to the Court, of course, in general. The prejudice comes from an upsetting of his settled expectations, which I think is the same extent you would find prejudice in the Hill and Hamilton case. Now, I know Riggins tried to distinguish Hill by saying that what happened was that his probation in Hill had terminated in the interim. That was the sort of magical thing that had happened in Hill between the issuance of the warrant and the execution of the warrant. In Hamilton, though, no such thing happened. And Hamilton didn't discuss prejudice. Hamilton was a two-and-a-half-year delay, I think, as well. And there wasn't any discussion of prejudice by this Court. There wasn't any finding of prejudice. And it all occurred within the period of probation, just as it did for Mr. Clements. Mr. Clements, unlike the defendant in Riggins, Riggins was unable to show prejudice, does have a significant event that occurs, just as it did in Hill, which is that his – because he was compliant, because he paid his fine, his probation switched from supervised to unsupervised. So in Hill, there was an important event that occurred in the course of his probation during that unexcused portion of the claim. I don't understand why that's a big deal. You buy yourself out of supervision, but he still had the dirty U.A. I don't see those prejudices. And he had the bad U.A. before he paid the fine. That is to say – That's correct. Anything he did thereafter might have been excused, but prior to paying the fine, he's on the hook. That's correct. But that's also true of Hill and Hamilton, which are two cases where the Court did dismiss the order to show cause without a finding of prejudice. Hill and Hamilton, it's notable, did not have hearings. They both admitted, just as Mr. Clements essentially did by stipulating to the facts. They both admitted to those violations, and the Court still dismissed without a finding or discussion of prejudice. So I think the only – and that's certainly then not the first type of prejudice Your Honor mentioned where there's a problem of proof now, because both Hill and Hamilton admitted, just as did Mr. Clements. It has to be the second type of prejudice. But the delay – I'm troubled by the comparison with Hill and Hamilton, if those are the key cases that tell us whether or not the delay has been unreasonable, because by comparison to those two cases, this delay was pretty short. It was, Your Honor. The delay was short – shorter, certainly, in comparison. But as for the question of prejudice, I think that obviously the length of delay goes to what he was doing with his life. The fact that he paid – an indigent defendant who had appointed counsel, a young man, paid off a $2,000 fine within a matter of months shows that, as Your Honor questioned, was he working? Certainly, he was. If it is – Well, we don't know what kind of work, whether it's legit. Order. Is there anything on the record that he paid this out of his own funds? It's certainly in his allocution he was explaining to the Court. He explained to Judge Houston, Magistrate Judge Houston, that he'd gotten his life together and he was working. I think all those things are certainly in his allocution. I think that's the only time it would have become relevant, what he was doing. No one else. Do we know from the record that he paid the fine out of his own funds? I don't think that's – I'm trying to recall if it's in his allocution, Your Honor. That's the only place it would be, because the docket just indicates that the fine was paid. And the only time any – other than that, it didn't become an issue. So I think that's why it's not in the record. What page is the allocution? The allocution, Your Honor, I want to say one – I'm going off memory. I want to say 112. I know the magistrate court – no, that's the original magistrate court appearance. I want to say it's in the 130s. I really apologize, Your Honor, I don't have that. The other thing I wanted to point out about the distinction between Hill and Hamilton and Riggins was that in Hill and Hamilton, we have a case where the defendant committed an isolated violation, and it was followed by a long period of compliance, which is exactly what we had in Mr. Clements' case. There were the two dirty UAs in August, followed by complete compliance thereafter. He was doing everything he should have thereafter, which is exactly what Hill and Hamilton did. Riggins did the contrary. The facts of Riggins are that he did let them know where he was, but he did not comply with his duty to report. And so what we have in Riggins is a case where it was a continuing, ongoing violation throughout the period of unexcused delay, which in Riggins was quite long, four years. Throughout that period of unexcused delay in Riggins, he was continuing to violate by not reporting, whereas Mr. Clements, just like Hill and Hamilton, had an isolated violation followed by compliance. And I think that's where the prejudice comes from, as Your Honor said. Somebody who has an isolated violation followed by compliance, especially when there's an important event such as their supervision turning from supervised to unsupervised, has a settled expectation that they're not going to be yanked, as you say, from their rehabilitated life and put back in custody. There's an important quote in Riggins, Your Honor, where they say, Riggins' only proposed prejudice is that he was unwillingly yanked from his life where the government – where he thought he'd been forgotten by the government. And the difference between that and this and Hill and Hamilton is that the defendant didn't think he'd been forgotten by the government because he was compliant. He thought he'd been forgiven. He'd been led to believe he'd been forgiven because it was so long ago and he'd been compliant in the interim. We're running over time, but let me ask you this. What's at stake here is not any further jail time, but rather it's just two years of supervision, correct? I think ultimately it's the question of whether the remainder should be supervised or unsupervised. Yeah. So he – Sorry. So he was not sentenced to the eight months the judge was originally compliant? No. It was his – what had become unsupervised was switched to supervised. I think that's all at stake. For the remainder of the two years? Correct. What struck me about your client was that he even tested clean when he was stopped at the airport. Absolutely. And coming back from a vacation. And he was no longer supervised at that time and he was coming back from a vacation in Spain. Anyway. What do you think going to jail here, he's just being supervised for a longer time? Correct. It's that it's longer and it's – Assuming that he is gainfully employed, as he says in his allocution, this won't entail losing his job? No. It doesn't, Your Honor. As I say, it's a longer period of supervision as opposed to what he had been led to believe were the rules that if he had paid the fine and complied that he would be unsupervised and it would be terminated at a certain point. Thank you, Kevin. Thank you, Your Honor. Good morning. My name is Rolando Gutierrez. I represent the government. I'm from the Southern District of California. And if I can add at the outset, it was on page 134 of the record, the second whole paragraph     of time. And I think it's important to point out that he was not supervised for a longer period of time, but he was gainfully employed. Thank you. And what he's been doing since the original OSC allegations? You know what I don't understand is, first of all, the government's lack of explanation as to why the six-month delay and also why the government wouldn't have every incentive to serve the warrant while Mr. Clements was under his supervised release portion of the probation sentence as opposed to his unsupervised release. And number three, why when the warrant issued in November, when he came back and dutifully reported to the probation office in December, at which time he was also tested clean, they didn't give him the warrant then. I don't understand any of this, and the government hasn't explained any of this. It's understandable, Your Honor, if I may. There were efforts made, as indicated in the record, as to ascertain why the marshals did not do anything for that six-month period, and it was not put in the record. But there was a specific explanation, and if the Court would like, just for informative purposes, I can give that explanation. Well, why wasn't it put in the record? I'm not sure we can consider it if it's not in the record. Exactly. And I think the issue before the Court is when there is an unexplained six-month delay, is that per se unreasonable? Yes. Well, when they've had all this opportunity to actually serve it. That's correct. But I would say that he was, the Central District did not know where he was after September. They did a home visit, and that's stated in the record. And at the home visit, he was no longer living there. What about December? December was a letter. They received a letter on December 6th where it was a form letter where he was reporting. Wasn't he tested in December? It's my understanding that he wasn't. I can't double-check, but it was my understanding after speaking with the probation officer at that time that it was a letter, a reporting letter stating that he was still required to report. I thought he was sending monthly letters that gave his address. That's the type of letter that was sent, and the last one was sent in December. But it wasn't any person reporting, from what I understand. The last import or the last address false, is that where they went and they? I don't believe they did anything because that letter was sent to probation, and that the marshals that were tasked with serving the warrant were the ones who would have had to go to the Central District or contact the marshals in the Central District to serve the warrant. There is no good explanation for it. Well, wouldn't they call probation and find out where the guy is? I mean, you've got a guy charged with a probation violation. You call probation and ask where he is. The only explanation that the record supports would be the reasons given by Judge Moskowitz. He said something about how it's between two districts, and I couldn't see what difference that made. It was, I think he referenced also the fact that it's a high case load in Southern District California. The marshals are tasked with prioritizing what warrants they tend to serve for. He mentioned violent criminals, felonies, and then if they get? That's not a real good reason. I mean, if arresting this fellow isn't important enough to do for six months, maybe it's not important enough to revoke him. I don't know if it's not important enough. It's just more important to focus on the violent people, and I know there are manpower constraints as recognized in Wong Cho, but we do have different districts, and it was a misdemeanor supervised release type situation. There is no good explanation. There were no efforts done. I can say that. It kind of bothered me as a former district judge. I didn't issue that many bench warrants, but when I did, I expected people to get arrested. Actually, being in the Central District as a former district judge there, I would be very careful when I actually issued a bench warrant, because if I did issue a bench warrant on a Friday, they would be likely to spend the weekend in jail, and maybe unnecessarily, because the marshals acted that fast. Now, that was about 1996 through 98, but they acted quickly, and they would bring people in, and they would spend the weekend in jail before they could get to a judge and have things heard, and that was for probation violations. Those are the kinds of bench warrants I issued. So that's just my experience, and it has about as much relevance as the information outside the record that you want to provide to me, but I don't think I can give much weight to that argument. If I were to tell you the information, it would just further show that there is no valid excuse, and that's why it was not presented to the... Right. You tell me, and I won't consider it. The call was made to the marshal's service to find out what, if any, activity was done, because normally there was a record kept, and I was told that misdemeanors are kept on a pad of paper, and that the person who was tasked with serving that warrant was no longer with the service. I had no way to put in front of Magistrate Judge Houston to make an explanation. There was no explanation, and nor was I able to get an explanation, not for lack of trying. So given that there was no explanation, the government conceded that essentially, did not attempt to fashion one whole cloth, and relied instead on the prejudice aspect, because even before Judge Magistrate Houston, we did reference the prejudice, the lack of prejudice, and it was the defendant's or the appellant's position at all times that he was not even required to, and at all times when he was asked about prejudice, chose to withdraw. Let me ask you about prejudice. Certainly. The kind of prejudice that the cases have mostly talked about is the prejudice that bears on proof of the violation or its absence. There isn't any suggestion that that sort of prejudice pertains here. There was another kind of prejudice that occurred to me that I was consulting with your adversary about, and that is where at time one, the person has the dirty UA, he's violating the terms of his probation, and the probation officer reasonably thinks he needs some punishment to get him to shape up. By the time they pick him up long afterward, he has shaped up, and at this point punishing him would actually interfere with his rehabilitation instead of furthering it, because he's already gotten himself together, he's behaving himself. This case, I'm trying to figure out what the prejudice is. He won't be going to jail on account of the dirty UA, but he will lose his freedom for an additional period. He'll have an extension of supervision. Could you discuss that in terms of whether that's sufficient prejudice if we assume that the government picked him up too late? Certainly. Certainly, Your Honor. The appellant had a really rocky start with regard to his supervisory release. As you can tell, within a month of being put on supervisory release, he had numerous violations on all different spectrums, the dirty tests, not reporting, telling him that he would look for, I believe, a job when he got a roundabout to it, or he'd think about it and get back to the probation department. And within four months, the warrant issued. And the only evidence that we have that he has straightened up his life is his own testimony or his own elocution to the judge when he was actually sentenced. And it is rather favorable, but I can submit to the Court that it was uncooperative but for his statements. So as was discussed with Magistrate Houston by the government at the time, that since he seems to have done better, why don't we put him on supervisory release? We're not looking for more time, because on supervisory release, we can see if he is, in fact, telling us the truth. If he doesn't test dirty, there won't be any problems. It was raised up by the probation officer, because originally he was contemplated to put on unsupervised release. But they said in order to test him, he has to be on supervised release. So it was just for the testing that would be done that was supervised versus unsupervised release. So you're saying it's no prejudice, really. It just lets us corroborate the truth of what he said on page 134. And if it is true, leave him out. That's correct. So if he stays clean, he stays out, and this two years of supervised release that was imposed as a result, that expires in summer of 2004? I believe July 2004. That's correct. So it was just an effort to make sure that, given his rocky start, that he had the ability to show that he was, in fact, rehabilitated. No additional custody time was granted. And under the Wickham case, the government's position has always been that he has to show some prejudice. And there was no prejudice shown. Now it was saying the fact that there is absolutely no explanation. The government's position that six months is not per se, without prejudice or more, unreasonable in and of itself. I just wish there was a reason. The word reasonable versus unreasonable has to have some meaning. There has to be some reason. And the only response I can offer the Court on that matter is the given workloads and districts where there is a heavy caseload. And the marshals do have to prioritize. That is, in and of itself, an excuse. But that, as Judge Moskowitz attempts to elucidate and take judicial notice of, that it's a heavy caseload there, and they do need to prioritize, because if they start making first sight of it. You know, that's a dignified way of saying it. The truthful way, which you've already given us, you fouled up, or they fouled up. And I think the foul up was because of the workload. Because, to be quite frank, a misdemeanor OSC, in the sense of prioritizing versus violent felons, is going to be a lesser priority, I suppose. Thank you, counsel. Thank you, Your Honor. Thank you. The United States v. Clements is submitted.
judges: Kleinfeld, Wardlaw, W Fletcher